## Chicago Title and Trust Company, Appellant, v. Chief Wash Company et al., Appellees.

### Gen. No. 39,248.

Heard in the third division of this court for the first district at the December term, 1936. Opinion filed June 30, 1937. Rehearing denied July 12, 1937.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, CASTLE, WILLIAMS & McCARTHY and NORBERT B. TYRRELL, all of Chicago, for appellant; VINCENT O'BRIEN, JOHN MERRILL BAKER and NORBERT B. TYRRELL, all of Chicago, of counsel.

JOHN A. BROWN, of Chicago, for appellees.

MR. JUSTICE HEBEL delivered the opinion of the court.

The Chicago Title and Trust Company, successor trustee to Cody Trust Company, filed its complaint against the Chief Wash Company and others, as defendants, for the purpose of foreclosing a trust deed given to secure an issue of $65,000 of bonds which were

executed and delivered by the Chief Wash Company, one of the defendants, the trust deed to secure the payment of the amount conveyed to the trustee, the real estate described and the building thereon constructed for the defendant's business of doing laundry work. The Chief Wash Company answered and filed a counterclaim for the removal of the trustee and for damages against it on account of an alleged wrongful bringing of the complaint in this case.

The First National Bank of Ottawa, and many others claiming to hold all of the unpaid bonds of the issue, months after the filing of the complaint, filed their joint intervening petition, seeking the removal of the trustee, the appointment by the court of a successor, and an accounting. The plaintiff answered the counterclaim and the intervening petition.

The issues raised by the petition and answer were set for trial but those raised by the bill to foreclose, the counterclaim and the respective answers thereto were not set for hearing and are still pending.

The trial was had before the court, and resulted in a decree removing the plaintiff trustee and appointing a successor to whom the plaintiff was directed to surrender the trust property and to account.

Thereafter the plaintiff filed its two successive petitions, offering to resign the trusteeship and praying that the decree so entered be set aside, which petitions were denied by the court.

The appeal now pending in this court is from the decree of removal and appointment of a successor to the plaintiff, and direction to surrender the trust property to said successor trustee, and to account.

The defendant, Chief Wash Company, executed its $65,000 of bonds, which were sold by Cody Trust Company. These bonds were secured by a first mortgage trust deed upon the property therein described to the Cody Trust Company, as trustee. The property described in the trust deed was improved and was used

solely by the defendant in the operation of its laundry business. The laundry equipment and machinery which had been purchased by the Chief Wash Company for $128,000, was separate and apart and not pledged to secure the payment of the bonds, but was subject to a chattel mortgage held by a finance company, to secure the unpaid balance of the purchase price, amounting to $59,000.

In December, 1933, Charles Albers was appointed receiver of Cody Trust Company, and later, on its behalf, resigned the trusteeship under said trust deed. The Chicago Title and Trust Company, which the trust deed named successor trustee, accepted the successor trusteeship, upon due investigation.

At the time of the acceptance by the plaintiff herein, defaults existed in the payment of three principal maturities of $1,500 each, which came due on June 1, 1933, December 1, 1933, and June 1, 1934. There was also a default in the payment of the interest instalments due on the same dates, respectively, in the sums of $1,680, $1,635 and $1,590, excepting as to $560, which had been paid on account of the interest coupons due June 1, 1933.

In February, 1934, the Chief Wash Company, upon a court order, obtained from the receiver of the Cody Trust Company its list of bondholders, and on February 16, 1934, March 22, 1934, and April 7, 1934, communicated by letter with the bondholders in an effort to procure their assents to a plan of extension. A copy of the plan was submitted to the bondholders with the letter of April 7, 1934.

On June 18, 1934, the Chief Wash Company had procured a deposit of 80 per cent in amount of the outstanding bonds, at which time its attorneys wrote the Chicago Title and Trust Company, as trustee, and advised it of its extension proposal, of the appointment of The Trust Company of Chicago as depositary and of the assent to the plan as outlined in the letter of April

7, 1934, by the holders of 80 per cent of the unpaid bonds, and called to the attention of the trustee the fact that under the terms of the trust deed, it was not required to foreclose unless 25 per cent of the bondholders demanded such action and pointed out that, under the circumstances, no such demand could be made, and therefore any foreclosure would be brought solely on the initiative of the trustee and at its peril.

On July 7, 1934, there being but 80 per cent of assents of the bondholders to the plan, the trustee, having obtained advice of its counsel as to its duty to act, without prior notice to the mortgagor and without any request from the bondholders, filed its complaint for foreclosure and for receiver, the said defaults still continuing. It does not appear from the record that at any time prior to the filing of the bill to foreclose did any bondholders or combination of bondholders request the trustee to refrain from acting for any reason.

The trust deed provides that in case of default in the payment of principal or interest, the trustee may (and upon the written request of the holders of 25 per cent in amount of the bonds outstanding shall) declare the principal of all of said bonds of whatsoever maturity at the time of such declaration outstanding and unpaid to be due immediately and may, without any action on the part of any bondholder and without the necessity of the possession of any of said bonds or interest coupons, institute proceedings to foreclose the trust deed in any manner provided by law.

The trustee, after the filing of the bill, promptly applied for a receiver, but its motion was continued to September 15, 1934, on condition that the mortgagor pay it $100 per month to be applied on taxes. This without prejudice to either party. Aside from filing a brief amendment to the bill, the trustee took no further action to prosecute the foreclosure but stood by to see whether the plan of extension would be consummated.

By September 15, 1934, the date to which the motion for receiver had been continued, the owner had procured the deposit of all of the bonds except $800 par value thereof, and the motion for receiver was denied. Certain of the bonds had been purchased by the secretary and treasurer of the mortgagor corporation. It was ordered that the trustee pay on account of taxes the funds theretofore deposited with it under order of court pending disposition of the motion for receiver.

On October 6, 1934, all of the unpaid bonds having been deposited for the purposes of the plan, the Trust Company of Chicago caused appropriate indorsements to be made upon the bonds evidencing the extension of the time of payment thereof and attached appropriate extension interest coupons and to further evidence the extension joined in a supplemental trust indenture.

On October 18, 1934, Chicago Title and Trust Company furnished the attorneys for the Chief Wash Company a statement of the costs, expenses and charges incurred in connection with the trust and with the proceeding, which included the service charge for executing the proposed extension agreement and for certifying the extended bonds should it perform that service.

On February 18, 1935, the attorneys for the Chief Wash Company wrote the Chicago Title and Trust Company and stated that the charges so requested were unreasonable and exorbitant; that in view of the completed extension, the pending foreclosure case was now one for fees, which their client, the Chief Wash Company, was unwilling to pay. They suggested that a great deal of time and expense could be eliminated if the Chicago Title and Trust Company resigned as trustee and dismissed the suit. They did not, however, offer to dismiss their counterclaim.

On February 21, 1935, the Chicago Title and Trust Company, in reply to the foregoing letter, concluded that its action as trustee in filing the complaint was in

accordance with its duties and that in its opinion the court should pass upon the questions raised by the Chief Wash Company.

On July 12, 1935, the Chief Wash Company filed its amended and supplemental answer and counterclaim, setting up in substance the foregoing facts, including the consummation of the extension agreement subsequent to the filing of the complaint and alleging that Chief Wash Company has ''heretofore demanded of the plaintiff that it dismiss and discontinue its said action of foreclosure but that said plaintiff has refused and still refuses to so dismiss and has demanded from the defendant that it pay the plaintiff certain fees, expenses of audit and other charges claimed to be due it in this action before it will dismiss the complaint.''

The amended and supplemental counterclaim shows substantially the same facts and alleges that by reason of the wrongful bringing of the complaint, defendant has been damaged in the sum of $200,000, for which it prays judgment and it also prays that the plaintiff be required to renounce and resign the successor trusteeship and that a successor be appointed; that the counterclaim and the answer of the plaintiff thereto is still pending and undisposed of.

On the same day, July 12, 1935, the First National Bank of Ottawa and others filed their intervening petition setting forth the fact that the extension plan was completed subsequent to the filing of the bill of complaint, and setting forth the acts of the trustee as above narrated, and praying for the removal of the trustee and the appointment of a successor.

In the discussion of the questions called to the attention of this court, it seems from the facts in the record that the controversy is altogether upon the question of the payment of fees and charges to the Chicago Title and Trust Company by the Chief Wash Company, one of the defendants. The amount in controversy consists

of several items for which a bill was rendered by the Chicago Title and Trust Company as follows:

"October 18, 1934.

"Mr. Richard A. Bierdemann,
33 North La Salle St.,
Chicago, Illinois
"Re: *Chicago Title and Trust Co. vs. Chief Wash Co.*

"Dear Sir:

"Our fees in the above matter to date, including moneys advanced by the trustee, total $514.63, itemized as follows:

| | |
|---|---:|
| Paid for auditing the account of Cody Trust Co. | $ 89.00 |
| Acceptance fee | 100.00 |
| Insurance fee | 25.00 |
| Paid for recording resignation of Cody Trust | .63 |
| For services rendered in the foreclosure suit, including the execution of the proposed extension agreement and certification of extended bonds | 300.00 |
| | $514.63 |

"I have discussed with Frank Madden the question of his fees and advancements in this proceedings, and he gives me a total of $774.75 itemized as follows:

| | |
|---|---:|
| Court costs advanced | $ 70.75 |
| Advanced for examinations of title | 54.00 |
| Attorneys fees to date | 650.00 |
| | $774.75 |

"I am sorry this matter has been delayed.

"Yours very truly,
"Hal G. Gallimore,
Attorney
"Chicago Title & Trust Company."

The total amount claimed is $1,289.38. This bill the principal defendant refused to pay.

The plaintiff insists that its action in filing the foreclosure bill was proper and justified, and that the situation must be viewed as of the date the bill was filed, and suggests that the duty of the trustee to its *cestuis que trustents* is several, and the trustee is not at liberty to follow the wishes of a majority, and in the filing of this bill to foreclose, the trustee was bound to exercise reasonable care and prudence in doing so, and that it is not for the court to substitute its judgment for that of the trustee. Therefore, the refusal of the trustee to execute the extension agreement or to dismiss the bill was not ground for its removal.

The trustee, however, had knowledge that there was a movement on foot to extend the time of payment of the loan, which was secured by a trust deed under which the Chicago Title and Trust Company, as successor trustee, acted, and it had further knowledge that 80 per cent of the bondholders at the time the bill was filed had consented to the plan of extension suggested by the defendant Chief Wash Company, a copy of which was inclosed in the letter of April 7, 1934.

There was no pressing need for the trust company to file its bill to foreclose. While it is true that the courts will not substitute their judgment for that of the trustee, still they will interfere where, from all the facts, it would appear that the trustee in filing the bill to foreclose did not act for the best interest of the estate but, in fact, was arbitrary. The question of good faith of the trustee is always before the court. The trustee should act for the best interests of. all the parties.

The situation before us is one which merits the consideration of the court in determining whether the trustee properly exercised its discretion in filing the bill to foreclose after it had received notice that 80 per cent of the bondholders had agreed to an extension of

time of maturity of the loan, and during the pendency of the proceeding all of the bondholders joined in this plan of extension. It is our opinion that there is no evidence which would warrant the trustee in filing the bill to foreclose.

The trustee should always act for all the parties interested, and endeavor to bring about a situation which will preserve the estate. The trustee is never interested in the estate to the extent that it is necessary to take such drastic action as was taken in this case, wherein there does not seem to have been any complaint by any of the parties — bondholders or otherwise — such as would warrant the filing of the foreclosure bill.

The trustee has called our attention to the fact that it had been advised that if the bondholders were unable to reach an agreement, it may be liable for failure to file the bill to foreclose, but it surely could not be said that the 80 per cent who agreed could complain because the trustee refrained from action awaiting the outcome of negotiations for the purpose of adjusting the matter between the parties in interest.

From an examination of the record we are unable to find any item or fact which would justify the filing of this bill to foreclose at the time it was filed. The fact that the trustee was advised by an attorney to file the bill may go to the good faith of the trustee, and although there was a default which might properly be considered in filing such bill, still this trustee had knowledge of the efforts of the parties through negotiations to extend the maturity of the loan, which fact would indicate that there was no extreme necessity of filing the bill to foreclose for the purpose it was filed.

The plaintiff calls our attention to the case of *Sturges v. Knapp,* 31 Vt. 1. The court, in discussing the duty of the trustee to act over the objection of a major-

ity in number and amount of the bondholders in that particular case, said:

"They (the trustees) could not consult the entire body of *cestuis que trust,* and their duty being due to the body severally they were not at liberty to follow the advice or wishes of a majority, as they were still liable to the minority for faithful administration. . . . Having assumed the duty of faithful administration of the trust in behalf of the several owners of the bonds, they were not at liberty to shield themselves by anything short of showing the fact of such administration, or that they were excused by the owners' unanimous consent from the performance of their duty under the trust."

We quite agree with this general statement of the law. The trustee is to act for all of the bondholders, but it should act with discretion in so doing so as to refrain from causing any damage to the parties in interest. The plaintiff contends that not a single bondholder had requested the trustee not to bring foreclosure proceedings; on the other hand, it might be said that not a single bondholder had requested the trustee to act in instituting foreclosure proceedings.

The plaintiff further states that in its opinion the entire controversy has been caused by the vindictive feeling the Chief Wash Company had towards the trustee because it would not cooperate in forcing the bondholders into agreement on an extension proposal which was manifestly inequitable and unjust.

We are unable to find anything in the record which would justify this statement. It cannot be said that the bondholders in desiring to enter into an agreement for an extension were controlled by any act of the trustee. It is not the duty of the trustee to determine whether the plan accepted by the bondholders is inequitable and unjust.

The plaintiff finally concludes its argument by making this statement:

"We wish the court to bear in mind that the Chicago Title and Trust Company is not taking this appeal merely to obtain an allowance of its fees and expenses. It was at all times willing to accept whatever the court would allow and upon payment thereof to resign the trust providing the whole proceedings, including the counterclaim for damages were dismissed. It objects to a finding that it has been guilty of officious conduct and a breach of trust, but even that standing alone might not have resulted in appeal."

However, an appeal was taken, therefore it is the duty of the court to pass upon the questions called to its attention, and from all we have stated in this opinion, we believe the trial court was fully justified in entering the decree of June 5, 1936, removing the trustee. The decree is therefore affirmed.

*Decree affirmed.*

DENIS E. SULLIVAN, P. J., and HALL, J., concur.